Davis, J.
The theory upon which this action is based is that an attorney may not only contract with his client for a contingent fee, but that he may at the same time and upon the same consideration acquire such an interest in his client’s cause of action before judgment as to prevent the latter from settling his case without consent of the attorney. If this theory is sound the motion for judgment on the pleadings should have been overruled; otherwise it was properly sustained.
*266 It is, beyond question, the law in this state that attorney and client may lawfully agree upon compensation to the attorney contingent upon the amount to be recovered, either by settlement or by judgment; and it is also settled that such contract may be a valid consideration for an assignment of an interest in a judgment already obtained, such as might be enforced in equity, P. C. C. & St. L. Ry. Co. v. Volkert et al., 58 Ohio St., 362; but as we remarked recently, Pennsylvania Co. v. Thatcher, ante, 175, an attorney’s lien before judgment has not been heretofore distinctly recognized in this state and it has hitherto remained an open question, and one of much doubt, whether an attorney may before judgment acquire such an interest in the subject-matter of his client’s claim or cause of action as that the defendant to such claim or cause of action is bound to take notice of it. The questionable character of such a proposition arises from two considerations. First, an interest in a cause of action would seem to imply the right to be consulted in negotiations for settlement and the right to prevent a settlement which might be acceptable to the client. Second, an interest in the proceeds of a settlement is an interest in a fund which has no existence until the settlement is agreed upon and the money paid over, and therefore the attorney’s interest is in the fund in the hands of the client. In the case in hand, although the plaintiffs aver in their petition that their client “thereby,”- that is by the contract in writing, “made an equitable assignment to the plaintiffs of an undivided two-fifths interest in said cause of action and of the proceeds to be *267 realized therefrom, either by settlement or judgment” ; yet it appears from the contract itself, which is set out in full in the defendant’s answer, that there was no express assignment of an interest in the cause of action or of the proceeds to be realized therefrom, but that, there was an express agreement that the client should not coiyipromise or settle the cases without the approval and consent of the others.
It appears, therefore, that whatever may be the form of the contract, whether it contains an express assignment of an interest in the subject-matter of the client’s claim, or an implied assignment thereof, or no assignment at all, the really vital question in all of these cases is this: Does the contract contain an express or implied limitation upon the right of the client to compromise and settle his claim with his adversary. without the consent of'anybody else? When such a limitation appears in the contract, the contract is voidable at the option of the client and its illegality may be pleaded as a defense in any action founded on the contract; and the defendant to the suit concerning which the contract was made.'may, with or without notice of the contract, compromise with the plaintiff without the knowledge or consent of the plaintiff’s attorney and will not be liable to the attorney for his part. North Chicago St. R. R. Co. v. Ackley, 171 Ill., 100, reversing the judgment of the Appellate Court in the same case, 58 Ill., 572; Boardman & Brown v. Thompson, 25 1a., 487.
This court has spoken on this subject so frequently and definitely that there ought to have been no misunderstanding of its position. Key v. *268 Vattier, 1 Ohio, 132, resulted in a judgment for the defendant upon a demurrer to the declaration. The plaintiff declared upon a contract in which the plaintiff agreed to prosecute suits for the recovery of property, to pay the costs and be compensated by a part of the property to be recovered and it was further stipulated between the parties “that if any compromise should be effected, the same should be the joint act and consultation of the parties to said indenture.” At the conclusion of the opinion is the following clear and unmistakable statement:
“The stipulation in the contract, on which the opinion and judgment of the court are chiefly predicated, and to which they have directed it to be confined, is that which prevents Vattier from compromising and settling the matters in controversy, without the consent and concurrence of the other contracting parties. This point being considered sufficient the court forbear to give an opinion on any other. As the provision on the subject of cost is not set out in the declaration, and the defendant has demurred without oyer, that feature in the contract has not been considered.”
So that Key v. Vattier is a decision upon the precise question now under review. The court was equally explicit in Weakly v. Hall, Exr., 13 Ohio, 167, when it said:
“It is unnecessary, perhaps, to say anything in reference to the lien which is set up in the replication, and which, it is insisted, could not be discharged by the release of Weakly to Hall. But we take this occasion" to say that the law of Ohio will- *269 tolerate no lien in or out of the profession, as a general rule, which will prevent litigants from compromising, or settling their controversies, or which, in its tendencies, encourages, promotes or extends litigation. We think the replication is bad, and the demurrer is sustained. Judgment for defendant.”
The question was again before this court in Lewis v. Lewis, Admx., 15 Ohio, 715, and it was again said that:
“A contract with an attorney to prosecute a suit containing a stipulation, that the party should not have the privilege to settle or discontinue it, without the assent of the attorney, would be so much against good policy, that the court would not enforce it. Much less will a court raise an implied contract, in order to encourage and foster litigation.”
In Brown v. Ginn, Trustee, 66 Ohio St., 316, the court, Spear, J., delivering the opinion, said:
“Again, if this paper effected the object, and was a real transfer of these accounts to the attorney, the several parties of the second part thus parted with all right to control the litigation or to compromise it without the consent of the attorney, and this inability was made doubly so by the fact that no one of the second parties had any sort of interest in the portion of the demand which rested upon the services of any other. Upon all the authorities such an arrangement _is champertous, and will not be maintained by the courts. * * * So that if the agreement vested in the attorney the legal title to the accounts so as to constitute him the real party in interest, and thus enable him to bring *270 an action in his own name, such action cannot be maintained because against public policy, while, if he is not, within the meaning of section 4993, the real party in interest, the case would fail for that reason.”
We have brought together these quotations from former decisions in order to present a conspectus, which demonstrates that this court has always maintained a consistent and unambiguous attitude in regard to contracts of the kind which we have in this case. Some further instructive illustration may be -found in Pennsylvania Company v. Lombard, 49 Ohio St., 1, opinion by Minshall, J., 5-6; Stewart v. Welch, 41 Ohio St., 483; and remarks of Okey, J., in Diehl v. Friester, 37 Ohio St., 477.
These cases also show that the illegal stipulation renders the whole contract illegal and indivisible; and that whenever the illegal stipulation was inserted, it so far tainted the whole contract that no relief whatever was granted upon the contract. It could not well be otherwise. If the plaintiffs may waive the clause as to consent, ratify the compromise made by the client and recover from the defendant, when both parties to the compromise have acted on the theory that the contract is illegal and voidable, then the doctrine of the cases which we have cited, means nothing in practice; for it may be evaded in every case. If notwithstanding the illegal restriction upon the right to compromise, an attorney may nevertheless acquire such an interest in his client’s cause of action that the defendant thereto is answerable over to him after a compromise effected with the client, the real party in interest, then the doctrine of the cases *271 is a mere figment and may as. well be ignored; for the attorney will thereby have gained as much as if the veto on his client’s right to compromise had been sustained. It does not seem to us that the contention of the plaintiffs is supported by law or considerations of justice. 15 Am. & Eng. Ency. Law (2 ed.), 988 and note 4.

Affirmed.

Price, C. J., Shauck, Crew, Summers and Spear, J. J., concur..